UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFORMANCE SWING STAGE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COACTION SPECIALTY INSURANCE SERVICES, LLC, et al.,<br><br>Defendants. | Case No. 24-cv-03482-TLT<br><br>**ORDER REMANDING ACTION TO STATE COURT: ALAMEDA COUNTY SUPERIOR COURT DOCKET 24CV073070**<br><br>Re: Dkt. No. 11 |

Before the Court is a motion to dismiss filed by Defendants Coaction Specialty Insurance Services, Coaction Specialty Management Company, and New York Marine and General Insurance Company (collectively, "Defendants") against Plaintiff Performance Swing Stage ("Plaintiff")'s First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). ECF 11 ("Mot."). Defendants seek dismissal of all claims alleged in the FAC: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unfair business practices. ECF 1, FAC ¶¶ 17–26.

Having carefully considered the parties' briefs, relevant legal authority, and for the reasons stated below the Court hereby **REMANDS** this state-based action for lack of subject matter jurisdiction.

**I. BACKGROUND**

    **A. Procedural History**

On April 25, 2024, Plaintiff filed Complaint in County of Alameda Superior Court of California. On May 2, 2024, Plaintiff filed First Amended Complaint. On June 10, 2024, Defendants filed notice of removal based on diversity jurisdiction. ECF 1, Notice of Removal ("NR"). Plaintiff is a citizen of California while Defendants are citizens of Louisiana and New York. *Id.* Plaintiff's

1  FAC alleges that its excess policy annual premium increased by $60,625 and will remain higher for
2  at least the next five to seven years resulting in damages in excess of $300,000. FAC ¶ 16.

3  Defendants filed motion to dismiss for failure to state a claim. Mot. Plaintiff filed its
4  Opposition to Defendant's motion to dismiss, and Defendants filed Reply in support of its motion
5  to dismiss. ECF 12 ("Opp'n"), 13 ("Reply").

### B.   Factual History

Plaintiff Performance Swing Stage, Inc. is a corporation in the business of scaffolding and requires the use of commercial automobiles in their normal course of business. FAC ¶ 9. In connection with its operations, Plaintiff secured general commercial automobile insurance with Defendants Coaction Specialty Insurance Services, Coaction Specialty Management Company, and New York Marine and General Insurance Company with a policy limit of $1,000,000 ("Primary Policy"). *Id.* Separately, Plaintiff secured an excess policy with a separate carrier with a policy limit of $5,000,000 ("Excess Policy"). *Id.*

On October 22, 2020, a Plaintiff commercial vehicle was involved in an automobile accident in Alameda County which led to a case filing in the Alameda Superior Court captioned *Ransom v. Velazquez et al* ("*Ransom*") on August 10, 2021. *Id.* ¶ 10. Defendants hired Borton Petrini, LLP ("BP") to defend the action. *Id.* Plaintiff alleges that BP failed to investigate the claim even after a $1,000,000 policy demand was initially made in April 2022 and renewed in October 2022. *Id.* ¶ 11.

On March 1, 2023, BP informed Plaintiff of a $4.5 million demand in *Ransom*. *Id.* ¶ 12. Plaintiff retained personal counsel to review the *Ransom* litigation through which Plaintiff discovered that BP failed to conduct a deposition of the *Ransom* plaintiff or an independent medical examination. *Id.* On March 8, 2023, BP sent a "Pre-Trial Report" to Plaintiff which recommended a medical record review and an independent medical examination. *Id.* ¶ 13. On March 20, 2023, BP stated that they were unaware of Plaintiff's Excess Policy but were confident that the case would be settled within the $1,000,000 limit of the Primary Policy. *Id.* Defendants subsequently terminated BP and hired Ropers Majeski to proceed with *Ransom*. *Id.*

The *Ransom* litigation was ultimately settled for $1,450,000, triggering the Excess Policy. *Id.* ¶ 15. Plaintiff claims that in April 2024, Plaintiff sought to renew the Excess Policy and

discovered that the annual premium increased from $73,113 to $133,758. *Id.* ¶ 16. Plaintiff claims that this increased annual premium will remain for the next five to seven years. *Id.* Plaintiff claims the annual premium increase was due to Defendants failure to investigate, defend, and indemnify Plaintiff in connection with the *Ransom* litigation. *Id.* ¶ 18.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.   Removal Jurisdiction

28 U.S.C. § 1441(a) permits a state court action to be removed to federal court only when the federal court has original jurisdiction. If there is no jurisdiction at any stage of the proceedings, then the case shall be remanded. 28 U.S.C. § 1447(c); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Fed. R. Civ. P. 12(h)(3) further provides that "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." There is a "strong presumption against removal jurisdiction" and any ambiguity will be construed in favor of dismissal or remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d. 564, 566 (9th Cir. 1992)). Because of this presumption, disputed facts are resolved in favor of the non-removing party. *Segura v. Allstate Ins. Co.*, No. 13-cv-05594-YGR, 2014 WL 3945657, at *4 (N.D. Cal. Aug. 11, 2014).

## III. DISCUSSION

### A. Plaintiff Failed to Allege Direct or Consequential Damages for Any Claims.

Defendants argue that Plaintiff failed to allege damages for any claims. *Schellinger Bros. v. Cotter* provides a helpful summary of contractual damages under California law:

> Contractual damages are of two types – general damages (sometimes called direct damages) and special damages (sometimes called consequential damages). General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach. Because general damages are a natural and necessary consequence of a contract breach, they are often said to be within the contemplation of the parties, meaning that because their occurrence is sufficiently predictable the parties at the time of contracting are 'deemed' to have contemplated them. Unlike general damages, special damages are those losses that do not arise directly and inevitably from any similar breach of any similar agreement. Instead, they are secondary or derivative losses arising from circumstances that are particular to the contract or to the parties. Special damages are recoverable if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test). Special damages 'will not be presumed from the mere breach' but represent loss that 'occurred by reason of injuries following from' the breach.

*Schellinger Bros. v. Cotter*, 2 Cal. App. 5th 984, 1010 (Cal. Ct. App. 2016) (cleaned up); *see also King v. Facebook Inc.*, 599 F. Supp. 3d 901, 910 (N.D. Cal. 2022), *aff'd*, No. 22-15602, 2023 WL 5318464 (9th Cir. Aug. 18, 2023).

Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices all rely on the same alleged damages. The allegations in the FAC contain two possible instances of damages. First, the FAC claims that Defendants provided Plaintiff with counsel, BP, to defend the *Ransom* litigation. FAC ¶ 10. When Plaintiff expressed concerns about BP, Defendants provided Plaintiff with a different counsel. *Id.* ¶ 13. But before being provided different counsel, Plaintiff had to retain personal counsel to review BP's work in the *Ransom* litigation. *Id.* ¶ 12. However, the FAC does not allege damages related to retention of personal counsel stemming from Defendants' alleged breach of duty to investigate. Defendants make this argument, asserting that the FAC does not claim that "Plaintiff was required to retain its own counsel

4

1  to defend this lawsuit". Opp'n at 4. Accordingly, the Court finds that the FAC does not allege damages for retention of personal counsel.

Second, the FAC alleges that Plaintiff had to pay an increased annual premium of $60,625 for the Excess Policy. FAC ¶ 16. The FAC alleges that this increase was due to Defendants' failure to settle the *Ransom* litigation within the $1,000,000 policy limit. *Id.* The FAC does not elaborate on this link, but it can be inferred that Plaintiffs believe that the increased premium was the result of triggering the Excess Policy in the *Ransom* litigation settlement. The FAC alleges Defendants failed to investigate or respond to initial settlement demands. *Id.* ¶ 19.

Defendants argue that California law does not permit increased insurance premiums to qualify as damages in a case like this. In *Emerald Bay Community Association v. Golden Eagle Insurance Corporation*, plaintiff alleged breach of contract and breach of good faith and fair dealing with the only damages initially sought being amounts that were paid by another of the plaintiff's primary insurance providers. *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1084 (Cal. Ct. App. 2005). The district court held that plaintiff did not have a basis for damages and denied plaintiff's motion to amend to include additional damages including increased insurance premiums. *Id.* at 1085.

On appeal, the court addressed the question of whether increased insurance premiums qualified as damages. *Id.* at 1095. The court noted that "the cost of future insurance premiums implicates the marketplace aspect of an insured's relationship with the insurer." *Id.* The court continued, "[s]everal factors determine how much [the plaintiff] will have to pay for future liability insurance coverage" and that "it cannot be concluded that [the plaintiff's] insurance premiums would not have increased in any event." *Id.* Thus, the court held that "[t]he causal relationship between [the plaintiff's] claim that its insurance premiums have increased and [the defendant's] alleged wrongful failure to defend and indemnify it in the [underlying] action is too tenuous to support recovery of this expense as special damages." *Id.*

Defendants argue that, like in *Emerald Bay*, Plaintiff's allegation that Defendants' failure to settle the *Ransom* litigation within the Primary Policy limit triggered the Excess Policy which in turn resulted in future increases to the Excess Policy premium is "too tenuous" to qualify as

1  consequential damages. Mot. at 6. Defendants contend that myriad factors that may cause insurance premiums to change, and asserting damages for increased premiums simply because a claim was made on insurance fails to satisfy the damages requirement. *Id.*

Plaintiff does not cite any opposing caselaw but argues that *Emerald Bay* is distinguishable from the present case. Plaintiff argues that *Emerald Bay* contained parallel policies whereas here Plaintiff had different layers of insurance. In *Emerald Bay*, plaintiff carried a $2 million commercial general liability policy through defendant and a $1 million self-liquidating D&O policy with a $10 million excess policy from a separate carrier. *Emerald Bay*, 130 Cal. App. 4th at 1083. Plaintiff tendered the claim to both carriers as the policies ran in parallel and both parties had a duty to defend. *Id.* Because both carriers' duty to defend was triggered, the court could not conclude that plaintiff's insurances premiums would not have increased in any event. *Id.* at 1095.

Plaintiff argues that in contrast, here, the Excess Policy had no duty to defend or indemnify until the Primary Policy was exhausted. Thus, Plaintiff contends that the Court cannot similarly conclude that the Excess Policy would have increased in any event. Rather, the Excess Policy premium increased because of Defendant's failure to defend. Plaintiff concedes that a "marketplace aspect" of an insured relationship exists. But Plaintiff argues that the increase in the Excess Policy premium cannot be traced simply to market forces when the Excess Policy would not have been triggered had it not been for Defendants' failure to defend.

Defendants counter that the distinction between parallel policies and different layers of policies is a distinction without a difference. Defendants note that *Emerald Bay* does not limit its application to layered policies. Defendants argue that *Emerald Bay*'s rationale for holding that an allegation of increased premiums does not provide direct or consequential damages required in pleading a breach of an insurance contract still applies here. There are still "several factors" at issue to determine "how much [a] plaintiff will have to pay for future liability insurance coverage." *Id.* Like in *Emerald Bay*, "[t]he causal relationship between [P]laintiff's claim that its insurance premiums have increased and [D]efendants['] alleged wrongful failure to defend and indemnify it in the [*Ransom*] action is too tenuous to support recovery of this expense as special damages." *Id.*

6

The Court agrees with Defendants that, while the Excess Policy had no duty to defend or indemnify until the Primary Policy was exhausted, the increased insurance premiums are still determined by several factors including market forces. The Excess Policy premiums may have increased regardless of whether the Excess Policy was triggered in the *Ransom* litigation. Further, as currently pleaded, it is not clear from the FAC that the Excess Policy would not have been triggered even if BP had fully investigated the initial $1,000,000 policy demands. The *Ransom* plaintiff's counsel may have increased the settlement amount beyond the $1,000,000 policy limit regardless of BP's actions as the extent of injuries became clearer from the multiple surgeries the *Ransom* plaintiff underwent. Like in *Emerald Bay*, there are several factors that could have led to the increase in Excess Policy premiums. Accordingly, the Court finds that, *as currently pleaded*, Plaintiff has failed to allege damages for any of its claims.

### B.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction…." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)). For federal subject matter jurisdiction to exist, a case must either involve diversity of citizenship between the parties or involve a claim arising under federal law. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 n.2 (9th Cir. 2002); 28 U.S.C. §§ 1331-32. Courts have a duty to consider its subject matter jurisdiction *sua sponte*. Fed. R. Civ. P. 12(h)(3); *see Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). After removal, if the federal court finds at any stage of the proceeding that it does not have jurisdiction, then the case shall be remanded. 28 U.S.C. § 1447(c); *Caterpillar*, 519 U.S. at 68.

Defendants filed notice of removal based on diversity jurisdiction. NR. In an action removed to federal court based on diversity jurisdiction, the removing party must show the requisite amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states…". 28 U.S.C. § 1332(a)(1). Here, Plaintiff has not alleged any damages since the increased insurance premiums do not qualify as damages under *Emerald Bay*. *Emerald Bay*, 130 Cal. App. 4th at 1095. Further, all of Plaintiff's claims are based on state law. FAC ¶¶ 17–

26. Accordingly, the Court hereby **REMANDS** this state-based action for lack of subject matter jurisdiction.

### IV. CONCLUSION

After review and consideration of the motion, the briefings, and all attachments and exhibits thereto, the Court finds that Plaintiff has not alleged any damages for the breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices claims. The Court hereby **REMANDS** this action to state court (Alameda County Superior Court Docket: 24CV073070) without prejudice for lack of subject matter jurisdiction.

The Clerk of the Court shall provide the receiving court with a certified copy of docket entries and a certified copy of this Order. Subsequently, the case is ordered to be closed and terminated.

This Order terminates ECF 11.

IT IS SO ORDERED.

Dated: September 11, 2024

_____
TRINA L. THOMPSON
United States District Judge